# STATE OF MICHIGAN

# COURT OF APPEALS

DAVID FINAZZO,

Plaintiff-Appellant,

v

FIRE EQUIPMENT COMPANY and LOW
VOLTAGE BUILDING TECHNOLOGIES, INC.,

Defendants-Appellees.

FOR PUBLICATION
April 17, 2018
9:05 a.m.

No. 338421
Washtenaw Circuit Court
LC No. 16-000919-NO

Before: SERVITTO, P.J., and MARKEY and O'CONNELL, JJ.

MARKEY, J.

Plaintiff filed a negligence complaint sounding in premises liability regarding injuries he received from a fall while working as a security guard at ITC in Ann Arbor. Defendants were contractors installing a fire protection system in ITC's computer room. During the installation plaintiff stumbled on electrical cabling that was lying on the floor pending its installation in the drop-down ceiling. Defendants moved for summary disposition on the basis that as contractors working on behalf of the premises possessor, they could avail themselves of the open and obvious doctrine. Defendants asserted the cable on the floor that plaintiff stepped on was open and obvious and without any special aspects that rendered it unavoidable or that created an unreasonably high risk of severe harm. The trial court agreed and granted defendants summary disposition on this basis. The trial court also ruled that plaintiff's ordinary negligence claim failed because reasonable minds could not differ in finding that defendants were not negligent and that plaintiff's injuries were the result of plaintiff's own carelessness. Plaintiff appeals by right. We affirm.

Plaintiff, David Finazzo, was working on July 20, 2012 as a security guard at ITC located at 1901 South Wagner in Ann Arbor, Michigan. ITC had contracted with Fire Equipment Company (FEC) to install a system for suppressing fires, and FEC had subcontracted with Low Voltage Building Technologies, Inc., (LVBT), to perform the electrical work necessary for the project. A 40-foot long cable, approximately one-half- to one-inch thick in diameter, lay on the floor where the work was being performed. The computer room was secured by a locked door. ITC employees used an access card to enter. Security guards admitted contractors like defendants. Before the incident, many people had entered and exited the computer room though its access door. At one point, plaintiff stepped on the cable and slipped, injuring himself when

-1-

he fell. Plaintiff asserts that defendants failed to protect him from the hazard created by the cable lying on the floor, and as a result, plaintiff suffered damages.

Defendants argued that as contractor and subcontractor, they were in possession and control of that part of the premises where the work was being performed; therefore, they could avail themselves of the open and obvious doctrine. In support of their position, defendants cited 2 Restatement Torts, 2d, § 384, p 289, certain unpublished decisions of this Court, and more than twenty decisions of other states that have applied § 384. Defendants contended that because the cable on the floor was open and obvious, they are shielded from plaintiff's claim of negligence based on premises liability. According to defendants, the cable on the floor was open and obvious and easily avoidable; plaintiff had been warned about it, and had, in fact, safely stepped over it numerous times.

Plaintiff argued that defendants did not possess or control the premises where the work was being performed, i.e., where computer equipment was located, because they could only gain access to the secure room through the actions of plaintiff. He further asserted that ITC was protecting its proprietary information and did not release possession and control of the computer room to anyone. Further, plaintiff argued, his ordinary negligence claim—the act of laying the cable on the floor and leaving the room—survived even if the premises liability claim failed.

The trial court ruled that plaintiff's claim was one of premises liability and that the open an obvious doctrine applied for the reasons defendants argued: The cable on the floor was open and obvious and was an avoidable hazard. The trial court also ruled that reasonable minds could not differ; defendants were not negligent and plaintiff's injuries occurred through plaintiff's own fault. The court granted summary disposition to defendants, and plaintiff now appeals by right.

## I. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition to determine if the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). A motion brought under MCR 2.116(C)(10) tests the factual sufficiency of a complaint and must be supported by affidavits, depositions, admissions, or other documentary evidence. *Id*. at 120; MCR 2.116(G)(3)(b). A court must view the substantively admissible evidence submitted at the time of the motion in the light most favorable to the party opposing the motion. *Maiden*, 461 Mich at 120-121. The motion may be granted when the evidence submitted by the parties and viewed in the light most favorable to the nonmoving party shows that there is no genuine issue regarding any material fact, and the moving party is entitled to judgment as a matter of law. *Lymon v Freedland*, 314 Mich App 746, 755-756; 887 NW2d 456 (2017). " 'A genuine issue of material fact exists when the record leaves open an issue on which reasonable minds could differ.' " *Id*. at 756 (citation omitted).

"Duty" is a legally recognized obligation to conform ones conduct toward another to what a reasonable man would do under similar circumstances. *Howe v Detroit Free Press, Inc*, 219 Mich App 150, 155; 555 NW2d 738 (1996). Generally, whether a duty exists is a question of law for the court and subject to de novo review. *Hill v Sears, Roebuck & Co*, 492 Mich 651, 659; 822 NW2d 190 (2012); *Simko v Blake*, 448 Mich 648, 655; 532 NW2d 842 (1995).

## A. THE OPEN AND OBVIOUS DOCTRINE

We affirm the trial court's application of the open and obvious doctrine to the facts of this case and its grant of summary disposition to defendants on that basis.

Plaintiff's claim is based on an injury received from a *condition* of the property—the cable lying on the tile floor pending its installation in the ceiling for the fire suppression system. A claim based on the condition of the premises is a premises liability claim. *James v Alberts*, 464 Mich 12, 18-19; 626 NW2d 158 (2001). Because plaintiff's injury arose from an allegedly dangerous condition on the land, his action "sounds in premises liability rather than ordinary negligence; this is true even when the plaintiff alleges that the premises possessor created the condition giving rise to the plaintiff's injury." *Buhalis v Trinity Continuing Care Servs*, 296 Mich App 685, 692; 822 NW2d 254 (2012); see also *Kachudas v Invaders Self Auto Wash, Inc*, 486 Mich 913; 781 NW2d 806 (2010).

A condition of the land is open and obvious when "it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection." *Hoffner v Lanctoe*, 492 Mich 450, 461; 821 NW2d 88 (2012). The cable on the floor in this case was open and obvious; no factual disputes exists that plaintiff was indeed warned of the cable; he could see it, and he could have easily avoided it by simply stepping over it. The trial court correctly ruled that while making changes to the property on behalf of its owner/possessor ITC, defendants are "subject to the same liability, and enjoys the same freedom from liability, as though he were the possessor of the land . . . ." 2 Restatement Torts, 2d, § 384, p 289. Generally, "a premises possessor owes a duty to an invitee to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land." *Lugo v Ameritech Corp*, 464 Mich 512, 516; 629 NW2d 384 (2001). But this duty does not extend to having to remove open and obvious dangers absent the presence of special aspects. *Id*. at 516-517; *Buhalis*, 296 Mich App at 693. Special aspects exist and impose a duty of care to protect those lawfully on the premises even if a hazard is open and obvious when the condition is effectively unavoidable or imposes an unreasonably high risk of severe harm. *Hoffner*, 492 Mich at 461; *Lugo*, 464 Mich at 517-518. No special aspects existed in this case.

Generally, however, for a party to be subject to premises liability in favor of persons coming on the land, the party must possess *and* control the property at issue but not necessarily be its owner. See *Kubczak v Chemical Bank & Trust Co*, 456 Mich 653, 660; 575 NW2d 745 (1998); *Merritt v Nickelson*, 407 Mich 544, 552; 287 NW2d 178 (1980). This rule is based on the principle that a party " 'in possession is in a position of control, and *normally* best able to prevent any harm to others.' " *Merritt*, 407 Mich at 552, quoting Prosser, Torts (4th ed), § 57, p 351 (emphasis added). In *Kubczak*, 456 Mich at 662, the Court expounded on this principle by quoting *Nezworski v Mazanec*, 301 Mich 43, 56; 2 NW2d 912 (1942):

> "It is a general proposition that liability for an injury due to defective premises ordinarily *depends upon power to prevent the injury* and therefore rests primarily upon him who has control and possession."

\* \* \*

"Liability for negligence does not depend upon title; a person is liable for an injury resulting from his negligence in respect of a place or instrumentality which is in his control or possession, even though he is not the owner thereof." [Emphasis in *Kubczak*.]

Our Supreme Court has further explained that "[p]ossession and control are certainly incidents of title ownership, but these possessory rights can be 'loaned' to another, thereby conferring the duty to make the premises safe while simultaneously absolving oneself of responsibility." *Merritt*, 407 Mich at 552-553, citing *Quinlivan v Great Atlantic & Pacific Tea Co, Inc,* 395 Mich 244, 269; 235 NW2d 732 (1975). The Court in *Orel v Uni-Rak Sales Co*, 454 Mich at 564, 567 n 2; 563 NW2d 241 (1997), quoting *Quinlivan*, 395 Mich at 269, described the effect of "loaning" possessory rights as follows:

> There is a clear relationship between the "control and possession" principle . . . and the Restatement "duty to make safe." The land or property owner's bundle of possessory responsibilities may be diminished by the "loaning" of one or several of these responsibilities. This "loaning" gives a quantum of "control and possession" to another party. If such quantum of control and possession confers responsibility for an aspect of ownership which gives rise to liability then a "duty to make safe" will be found to exist.

While our Supreme Court has never adopted wholesale the Restatement of Torts, it has consistently relied on the principles in the Restatement to develop Michigan's law of premises liability. See *Hoffner*, 492 Mich at 478-479; *Merritt*, 407 Mich at 552-554; *Lugo*, 464 Mich at 516-517; *Bertrand v Alan Ford, Inc*, 449 Mich 606, 611; 537 NW2d 185 (1995); *Riddle v McLouth Steel Prods Corp*, 440 Mich 85, 92-94, 485 NW2d 676 (1992); *Williams v Cunningham Drug Stores, Inc*, 429 Mich 495, 499-501; 418 NW2d 381 (1988); and *Quinlivan*, 395 Mich at 258-261. As discussed, our Supreme Court has also recognized that a property possessor may "loan" part of its "possession and control" to another, making the other party responsible for the care of invitees with respect to that part of possession and control conferred. See *Merritt*, 407 Mich at 553; *Orel*, 454 Mich at 567-568, n 2. So the Court has explicitly recognized the principles underlying the rule set forth in 2 Restatement Torts, 2d, § 384, p 289, which provides:

> One who on behalf of the possessor of land erects a structure or creates any other condition on the land is subject to the same liability, and enjoys the same freedom from liability, as though he were the possessor of the land, for physical harm caused to others upon and outside of the land by the dangerous character of the structure or other condition while the work is in his charge.

Comment *c* of § 384 indicates the stated rule would apply to the instant case where defendant FEC was under contract to ITC to make changes to its computer room by installing a fire suppression system. Comment *c* of § 384 provides: "The rule stated in this Section applies to anyone who erects a structure upon land or alters its physical condition on behalf of its possessor, irrespective of whether he does so as a servant of the possessor or as a paid or unpaid independent contractor." The stated rule also applies to defendant LVBT, employed as a subcontractor of FEC to perform the electrical work for the project. Comment *d* of § 384 provides in pertinent part:

> [A] general contractor employed to do the whole of the work may, by the authority of his employer, sublet particular parts of the work to subcontractors. In such a case, the rule stated in this Section applies to subject the particular contractor or subcontractor to liability for only such harm as is done by the particular work entrusted to him. [Comment *d*, 2 Restatement Torts, 2d, § 384.]

The imposition of premises liability on FEC and LVBT with respect to their work on the premises while installing the fire suppression system under § 384 is also consistent with the general principle that liability for a dangerous condition should fall on the party having power to prevent injury to others on the premises. *Kubczak*, 456 Mich at 662, *Nezworski*, 301 Mich at 56. Defendants, as contractors performing changes to the property by methods that were under defendants' control,[1] were also " 'best able to prevent any harm to others.' " *Merritt*, 407 Mich at 552, quoting Prosser, Torts (4th ed), § 57, p 351. So, it is appropriate to impose premises liability on defendants with respect to the work they controlled relating to changing the premises: installing electrical cabling for the fire suppression system. 2 Restatement Torts, 2d, § 384. But the duty imposed on defendants regarding premises liability would not extend to open and obvious conditions that are effectively avoidable and do not impose an unreasonably high risk of severe harm. See *Hoffner*, 492 Mich at 461; *Lugo*, 464 Mich at 517-518.

In this case, the undisputed facts establish that the cable on the floor was open and obvious. *Hoffner*, 492 Mich at 461. There is no factual dispute that plaintiff was warned of the cable; he observed the cabling being placed on the floor, and he could have, and, in fact, had easily avoided it by taking reasonable action for his own safety and simply stepping over it. The law of premises liability includes the principles that landowners are not insurers and that persons entering the property must exercise common sense and prudent judgment while on the land— they must assume personal responsibility to protect themselves from apparent dangers. *Id*. at 459-460. Consequently, the trial court correctly granted defendants summary disposition on plaintiff's complaint sounding in premises liability because the cabling on the floor was open and obvious and because no special aspects rendered in unavoidable or created an unreasonably risk of severe harm. *Id*. at 456; *Lugo*, 464 Mich at 514, 517-518; *Buhalis*, 296 Mich App at 692-693.

The sheer volume of decisions from other states that support the rule of law stated in § 384 is persuasive. Michigan courts are not bound by foreign authority with respect to questions of state law, but they may find it persuasive. *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 221 n 6; 761 NW2d 293 (2008). But because Michigan Supreme Court authority supports the underlying rationale of the § 384, as previously noted, the sheer volume of

---

[1] "*Random House Webster's College Dictionary* (1995), p 297, defines 'control' as 'exercis[ing] restraint or direction over; dominate, regulate, or command.' Similarly, Black's Law Dictionary defines 'control' as 'the power to . . . manage, direct, or oversee.' " *Derbabian v S & C Snowplowing*, 249 Mich App 695, 703-704; 644 NW2d 779 (2002).

foreign authority approving of § 384 is persuasive to our decision of applying it in Michigan also.[2]

Plaintiff also misplaces reliance on *Garrett v Sam H Goodman Building Co, Inc*, 474 Mich 948 (2005) ("summary disposition based on the 'open and obvious' doctrine was improper because neither defendant was the premises possessor"), and *Fraim v City Sewer of Flint*, 474 Mich 1101 (2006) ("The open and obvious doctrine is inapplicable to this case because defendant did not possess or control the premises within which plaintiff was injured."). But reading the authority these summary disposition orders cite, we note that both orders stand for the proposition that the assertion of the open and obvious defense depends on the theory of liability being advanced. Specifically, the defense applies to premises liability claims.

The Court in *Garrett* cited to *Ghaffari v Turner Constr Co,* 473 Mich 16, 23; 699 NW2d 687 (2005). The latter case involved a claim brought under the common-work-area doctrine. The *Ghaffari* Court held that "the open and obvious doctrine and the common work area doctrine are incompatible." *Ghaffari,* 473 Mich at 23. The open and obvious doctrine related to the duty of a premises possessor when a plaintiff asserted a premises liability theory. *Id.* The open and obvious defense was incompatible with the common-work-area doctrine, which imposes an affirmative duty on general contractors to protect against hazards that are open and obvious. *Id.* at 22-23. Thus, the statement in *Garrett*, 474 Mich 948, that "summary disposition based on the 'open and obvious' doctrine was improper because neither defendant was the premises possessor," simply means the open and obvious defense was unavailable because premises liability could not be asserted where the defendant was not the possessor of the property. See

---

[2] Defendants cite the following jurisdictions as following the common-law rule of § 384: See *Devazier v Whit Davis Lumber Co*, 257 Ark 371; 516 SW2d 610, 613 (1974); *Yee Chuck v Bd of Trustees of Leland Stanford Jr Univ,* 179 Cal App 2d 405; 3 Cal Rptr 825, 830 (1960); *Mile High Fence Co v Radovich*, 175 Colo 537; 489 P2d 308, 311 n 1 (1971), superseded by statute on other grounds, see *Bath Excavating & Constr Co* v *Willis*, 847 P2d 1141 (Colo, 1993); *Duggan v Esposito*, 178 Conn 156; 422 A2d 287, 289 (1979); *Cockerham v. R E Vaughn, Inc*, 82 So2d 890, 891-892 (Fla, 1955); *Chronopoulos v Gil Wyner Co*, 334 Mass 593; 137 NE2d 667, 669 (1956); *Thill v Modern Erecting Co*, 272 Minn 217; 136 NW2d 677, 684 (1965); *Barnett ex rel Barnett v Equality Sav & Loan Ass'n*, 662 SW2d 924, 927 (Mo App, 1983); *French v. Ambercrombie*, 156 Mont 356; 480 P2d 187, 192-193 (1971); *Kragel v Wal-Mart Stores, Inc*, 537 NW2d 699, 707 (Iowa, 1995); *Von Dollen v Stulgies*, 177 Neb 5; 128 NW2d 115, 119 (1964); *Harris v Mentes-Williams Co*, 23 NJ Super 9; 92 A2d 498, 499 (1952); *rev'd on other grounds* 11 NJ 559; 95 A.2d 388 (1953); *Samuel E Pentecost Constr* Co v *O'Donnell*, 112 Ind App 47; 39 NE2d 812, 817 (1942); *Savoie v Littleton Constr Co*, 95 NH 67; 57 A2d 772, 775 (1948); *Tipton v Texaco, Inc*, 103 NM 689; 1985 NMSC 108; 712 P2d 1351, 1358 (1985); *Broadway v Blythe Indus, Inc*, 313 NC 150; 326 SE2d 266, 270 (1985); *Elliott Rogers Constr, Inc*, 257 Or 421; 479 P2d 753, 758 (1971); *Leonard v Commonwealth*, 565 PA 101; 771 A.2d 1238, 1241 (2001); *Cook v Demetrakas*, 108 RI 397; 275 A2d 919, 923 (1971); *Rendleman v Clarke,* 909 SW2d 56, 60 (Tex App, 1995); *Williamson v Allied Group, Inc*, 117 Wash App 451; 72 P3d 230, 233 (2003).

*Kubczak*, 456 Mich at 660 ("Premises liability is conditioned upon the presence of possession and control, not necessarily ownership."); *Merritt*, 407 Mich at 552 ("Premises liability is conditioned upon the presence of both possession and control over the land.").

The same reasoning applies with respect to the statement in *Fraim*, 474 Mich 1101: "The open and obvious doctrine is inapplicable to this case, because defendant did not possess or control the premises within which plaintiff was injured." The *Fraim* Order cited to *Lugo,* 464 Mich at 516, which discussed that the open and obvious doctrine applies in premises liability cases to limit the duty a premises possessor owes to an invitee.

Finally, if plaintiff's argument were valid—that defendants may not assert the open and obvious defense because they did not possess the premises—it follows for the same reason that defendants are not subject to plaintiff's premises liability claim. See *Kubczak*, 456 Mich at 660; *Merritt*, 407 Mich at 552. But if ITC "loaned" some of its possessory rights to defendants, see *Merritt*, 407 Mich at 553; *Orel*, 454 Mich at 567-568, n 2, such that the rule of Restatement 2d, Torts, § 384, applies, then the trial court correctly granted defendants summary disposition on plaintiff's complaint sounding in premises liability because the cabling on the floor was open and obvious with no special aspects making the condition unavoidable or posing an unreasonably risk of severe harm. *Hoffner*, 492 Mich at 460-462; *Buhalis*, 296 Mich App at 692-693. Under either analysis, the trial court properly granted defendants summary disposition to the extent that plaintiff's claim was one of premises liability.

Plaintiff's argument that the cable was effectively unavoidable also lacks merit. The undisputed facts establish that the cable on the floor was open and obvious. *Hoffner*, 492 Mich at 461. There is no factual dispute that plaintiff was warned of the cable; he observed the cabling being placed on the floor, and he could have easily avoided it by taking reasonable action for his own safety and simply stepping over it. The law of premises liability includes the related principles that landowners are not insurers and that persons entering the property must exercise common sense and prudent judgment while on the land—invitees must too assume personal responsibility to protect themselves from apparent dangers. *Id*. at 459-460. In sum, the trial court correctly granted defendants summary disposition on plaintiff's complaint sounding in premises liability because the cabling on the floor was open and obvious and because no special aspects rendered the situation unavoidable or created an unreasonably risk of severe harm. *Id*. at 456; *Lugo*, 464 Mich at 514, 517-518; *Buhalis*, 296 Mich App at 692-693.

## B. ORDINARY NEGLIGENCE CLAIM

Contractors have a common-law duty to perform their work with ordinary care so as not to unreasonably endanger employees of other subcontractors or anyone else lawfully on the worksite. *Clark v Dalman*, 379 Mich 251, 262; 150 NW2d 755 (1967). Generally, unless the court can conclude that all reasonable persons would agree the defendant did not create an unreasonable risk of harm, whether a defendant's conduct in the particular case breached this general standard of care is a question of fact for the jury to decide. *Moning v Alfono*, 400 Mich 425, 438; 254 NW2d 759 (1977). In this case, the undisputed facts show neither defendant breached its duty of ordinary care by creating an unreasonable risk of injury; therefore, the trial court did not err by concluding that "reasonable minds would not differ that Defendants were not

negligent" and granting summary disposition to defendants as to plaintiff's ordinary negligence claim.

To establish a prima facie case of negligence, plaintiff must prove four elements: (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) causation, and (4) damages. *Case v Consumers Power Co*, 463 Mich 1, 6; 615 NW2d 17 (2000). In discussing the duty at issue in this case, the *Clark* Court noted that a basic rule of the common law

> imposes on every person engaged in the prosecution of any undertaking an obligation to use due care, or to so govern his actions as not to *unreasonably endanger* the person or property of others. This rule of the common law arises out of the concept that every person is under the general duty to so act, or to use that which he controls, as not to injure another. [*Clark*, 379 Mich at 261 (emphasis added).]

The duty arising from a contract under the common law, the *Clark* Court explained, is that of ordinary care. *Id*. "The general duty of a contractor to act so as not to *unreasonably endanger* the well-being of employees of either subcontractors of inspectors, or anyone else lawfully on the site of the project . . . ." *Clark*, 379 Mich at 262 (emphasis added). The reasonableness of defendants' conduct must be weighed against the principles that persons lawfully on the site must use good judgment and common sense for their own safety. (See *Hoffner*, 492 Mich at 459, and factors such as the potential degree of harm and whether the risk at issue is known. See *Case*, 463 Mich at 9 (noting that reasonableness of care under the circumstances represents a sliding scale, depending on the severity of the potential injury); Cf: *Lugo*, 464 Mich at 516-518 (no duty to remove open and obvious dangers unless they are effectively unavoidable or impose an unreasonably high risk of severe harm)). While determining whether defendants' conduct in a particular case created an unreasonable risk of injury would normally present a question of fact for the jury to decide, here, the undisputed facts allowed the trial court to find that all reasonable persons would agree that defendant did not create an unreasonable risk of harm. See *Case*, 463 Mich at 7, citing *Moning*, 400 Mich at 438.

In this case, ITC hired FEC to install a fire suppression system for its data processing center (computer room); FEC subcontracted with LVBT to install the necessary electrical connections for the fire suppression apparatus. Plaintiff David Finazzo was working on July 20, 2012, the date of his fall, as a security guard at ITC's facility in Ann Arbor. Plaintiff's job was to permit entry to the computer room for FEC and LVBT personnel and to monitor what was happening to keep the equipment and data secure. Plaintiff was to remain in the computer room while defendants performed their work. Plaintiff watched for two hours as defendants installed metal clad electrical cabling in the drop-down ceiling of the computer room. At some point before 10:30 a.m., defendants laid electrical cabling on the floor to facilitate measuring the proper length to cut for installation. Defendants warned all present, including plaintiff, that cabling would be on the floor temporarily during the installation work. Kimberly Wooden, employed by ITC at the time, testified that she was in and out of the computer room several times while the cabling was on the floor. Plaintiff warned her of its presence each time, and she was able to easily step over it. Plaintiff also safely stepped over the cabling numerous times before he fell.

Plaintiff's testimony, although vague, did not dispute the testimony defendants presented. Plaintiff testified that the computer room was adequately illuminated, had a tile floor, and that he could see a 40-foot length of cabling on the floor and could describe its color; he recalled it was one-half to one inch in diameter. Plaintiff also stated that he "probably" knew the cable was on the floor before stepping on it when he went toward the door without looking at the floor. Specifically, plaintiff testified that before he fell, "I would probably assume that I did see the cable." He also acknowledged defendants "probably told" him about the cables. When plaintiff turned to go to the door, "[he] didn't see the cables on the floor before [he] fell."

Based on the undisputed evidence, it is patent that plaintiff was warned of a known and observable trip hazard lying temporarily on the floor. Plaintiff was aware of the hazard; he and others had successfully and safely traversed the area by the simply carefully stepping over the cable numerous times. Unfortunately, it was plaintiff's own lapse of attention that caused him to fall when stepping on the cabling. Thus, for many of the same reasons that the cable on the floor was an open and obvious hazard without special aspects—the cable hazard was *avoidable* and did not create an *unreasonably high risk of severe harm*—we agree that defendants did not breach their general duty to perform their work "so as not to *unreasonably endanger* the well-being of . . . anyone else lawfully on the site of the project . . . ." *Clark*, 379 Mich at 262 (emphasis added). The undisputed facts in this case allowed the trial court to rule that all reasonable persons would agree that defendant did not create an unreasonable risk of harm. See *Case*, 463 Mich at 7, citing *Moning*, 400 Mich at 438.

We affirm. As the prevailing parties, defendants may tax their costs pursuant to MCR 7.219.

/s/ Jane E. Markey
/s/ Deborah A. Servitto
/s/ Peter D. O'Connell